GERMAN INS. CO. v. CAROLINE KISTNER, ADMRX.

1. APPRAISEMENT AND AWARD NOT CONDITION TO RIGHT OF ACTION ON FIRE INSURANCE POLICY, UNLESS DEMANDED BY INSURER.

No obligation is imposed upon the insured to cause either an appraisement to be made of the loss, or to furnish an award of an appraisement, as a condition precedent to a right of action on a fire insurance policy to recover the loss, unless such appraisal has been demanded by the insurer, under a policy which provides, that in event of disagreement as to the amount of loss, the same shall be ascertained by appraisers chosen by both parties, and that the loss shall not become payable until sixty days after satisfactory proof of loss has been received by the insurer, including an award of appraisers when appraisal has been required. Failure to demand an appraisal and award, in such case, constitutes a waiver thereof. Grand Rapids F. Ins. Co. v. Finn, 60 O. S. 513, and Insurance Co. v. Carnahan, 63 O. S. 258, distinguished.

2. INVENTORY TAKEN EVERY TWELVE MONTHS, OR WITHIN TWELVE MONTHS PRECEDING LOSS.

Insured is not required to take an inventory of stock every twelve months, nor must an inventory be taken within the twelve months immediately preceding the loss, under a fire insurance policy in which he covenants

and agrees to keep. and also produce in case of loss, the last detailed inventory of stock "which shall have been taken within twelve months prior to the date of the happening of any loss," etc. An inventory taken one year and seven days before the loss, is a sufficient compliance with the policy.

**3.** BOOKS OF INSURED WHICH SUBSTANTIALLY SHOW AMOUNT OF STOCK, SUFFICIENT.

Where the amount of goods on hand at the time of a fire can be fairly, reasonably and substantially ascertained from the books kept by insured, and there is no charge of an attempt to defraud the company, such books show a sufficient compliance with the policy requiring him "to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash, credit and exchange," etc.

**4.** FAILURE TO KEEP CERTAIN BOOK IN SAFE WILL NOT PREJUDICE INSURED, WHEN.

The failure of insured to have his bill book and cash book in the safe at the time of the fire, which occurred at a late business hour in the evening, will not defeat a recovery on a policy providing that insured shall keep his books of account securely locked in a fire proof safe at night, and at all other times when the store is not actually opened for business, etc., when it appears that the principal books required to be kept were in the safe at the time, that the condition of insured's stock could be fairly ascertained therefrom, that the books were destroyed without any fault of insured, and that insured acted as an ordinary prudent and honest man would have acted under similar circumstances in trying to save the building and its contents from destruction.

ERROR to Wood common pleas court.

**Van Pelt, Dale & Farneding, J. W. Gabriel** and **J. O. Troup,** for plaintiff in error.

**Baldwin & Harrington,** for defendant in error.

HAYNES, J. (Orally.)

The plaintiff in error brings its action in this court to reverse a judgment of the court of common pleas.

John Kistner, prior to June 28, 1901, and for a good many years prior thereto had been carrying on a grocery and dry goods store in the village of Custar in Wood county, and had been insuring with the German Insurance Company, plaintiff in error, and on June 28, 1901, he took out another policy of insurance for another year for the sum of $1,000. On April 26, 1902, his store was destroyed completely, by fire, and thereupon proceedings were taken by Caroline Kistner, his administratrix (he having died in the meantime), to collect the loss upon this policy of insurance. The negotiations resulted in a disagreement of the parties, and a suit being brought in the court of common pleas, a verdict and judgment for the administratrix, and the prosecution of a petition in error in this court.

Two principal points are urged before us as grounds for reversing the court of common pleas and they arise upon clauses in the insurance policy; one clause of the policy reading:

"In the event of disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire; the appraisers together shall then estimate and appraise the loss, state separately sound value and damage, and failing to agree, shall submit their differences to an umpire; and the award in writing of any two shall determine the amount of such loss."

Then it further provides that the loss "shall not become payable until sixty days after the notice, ascertainment, estimate and satisfactory proof of the loss herein required having been received by this company, including an award of appraisers when appraisal has been required." I should say, that there was no appraisement made, none being required by either party.

The defendant sets up as one of its defenses that the plaintiff below failed to cause an appraisement to be made and to furnish an award to the company in writing by such appraisers, and claims that by reason of such failure, no suit can be maintained upon the policy of insurance.

The plaintiff below relied upon a decision made by the Supreme Court of this state, in the case of Grand Rapids F. Ins. Co. v. Finn, 60 Ohio St. 513 [54 N. E. Rep. 545; 50 L. R. A. 555; 71 Am. St. Rep. 736], and the defendant relies upon the case of Insurance Co. v. Carnahan, 63 Ohio St. 258 [58 N. E. Rep. 805]. The court following the case cited by the plaintiff below charged the jury that this defense that had been set up by the insurance company and spoken of by it in the second defense, says:

"The second defense relates to the making of an estimate by appraisers as to the amount of the loss; as to that question, there is nothing for the jury to consider."

It is claimed by the plaintiff in error that the case of Insurance Co. v. Carnahan, *supra,* overrules the case of Grand Rapids F. Ins. Co. v. Finn, *supra,* The suit in Grand Rapids F. Ins. Co. v. Finn, was brought upon a policy, that was, as we understand the citation or quotations, upon substantially the same language as the policy which is sued upon here; and especially that clause which provides that there shall be furnished an award by appraisers when an appraisal has been required. And the Supreme Court in that case said in the first syllabus:

"The provisions of a policy of fire insurance, that in the event of disagreement as to the amount of the loss it shall be ascertained by appraisers, that the loss shall not become payable until sixty days after

notice and satisfactory proof of the loss have been given, 'including an award by appraisers, when an appraisal has been required;' and, that no action on the policy shall be sustainable, 'until a full compliance by the insured with all the foregoing requirements,' do not make either an ascertainment of the loss by appraisers, or a demand by the insured therefor, a condition precedent to a right of action on the policy to recover the loss. Such provisions impose no obligation on the insured to furnish an award of appraisers, except when an appraisal has been demanded by the insurer.''

The decision discusses the matter at considerable length and gives the citations and authorities.

In Insurance Co. v. Carnahan, *supra*, suit had been brought upon a large number of policies, and six of them are included in this case. There had been four cases gone to the Supreme Court before this that were affirmed, and these six were brought up and reversed. There were several points made in the decision, but the third proposition they discuss is the one that refers to clauses of this nature. I have carefully gone into the Carnahan case and I see no statement that there was a clause in the policy like that in the policy at bar including an award by appraisers when an appraisal had been required. There were clauses in it, however, that upon a disagreement there should be an appraisement and award; and the same clause was in those policies, that is in the policy at bar, substantially that is:

''No suit or action upon this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire.''

In the fifth syllabus of this case, the court state their views as follows:

''A condition in a policy of insurance against fire, that in case of loss and a disagreement or difference between the parties as to the amount of the loss, that amount shall be ascertained by arbitration or appraisal, is a proper and valid condition; and where it is also provided that the condition as to arbitration or appraisal must be complied with before a suit can be brought against the insurer, the condition is thereby made a condition precedent, and to entitle the insured to maintain an action to recover under the policy, he must show that he has either performed the condition or has a legal excuse for nonperformance thereof.''

I will not read from the opinion at any great length, but there are a few lines I will read. The judge delivering the opinion, says:

''The insured cannot rest upon the silence of the insurer as to arbi-

Insurance Co. v. Kistner.

tration, when a difference arises as to the amount of the loss. It was therefore incumbent on the insured, not the insurer, to perform this condition as a condition precedent to his right of recovery, whenever a difference should arise, as to the amount of the loss whether a demand was made by the insurer or not; and *a fortiori* when the other party asserted a difference and demanded a compliance with the contract, the insured firm was put to its choice, at its peril, whether to perform or not."

It is suggested by counsel for plaintiff in error in argument that this opinion overrules the decision in the case of Grand Rapids F. Ins. Co. v. Finn, *supra.*

Grand Rapids F. Ins. Co. v. Finn, was decided June 20, 1899, and Insurance Co. v. Carnahan, *supra,* was decided November 13, 1900, a little less than eighteen months after. Judge Williams, who delivered the opinion in Grand Rapids F. Ins. Co. v. Finn, and the members of the court, were the same in each case, and in Insurance Co. v. Carnahan, Judges Minshall and Williams dissented. The dissenting opinion is not given, but it is entered. Now, if there had been any intention by the court in making the opinion in Insurance Co. v. Carnahan, to overrule the case of Grand Rapids F. Ins. Co. v. Finn, we think they would have so stated, especially as Judge Williams, who delivered the opinion in Grand Rapids F. Ins. Co. v. Finn, was present and dissented. Undoubtedly there was a discussion of that whole question, and a discussion of Grand Rapids F. Ins. Co. v. Finn, and its bearing upon the latter case.

We think that the difference between the two cases arises perhaps upon this clause, "if the parties require it, or it be required." Judge Williams, in the case of Grand Rapids F. Ins. Co. v. Finn, says either party may require it. In the case of Insurance Co. v. Carnahan, that was omitted, and it would be practically an agreement that in case of disagreement there shall be an appraisement and award, and that appraisement shall be furnished to the insurance company. Now in that case it might well be argued that the matter of disagreement laid the foundation for the obligation to have an appraisal and award, but when you come to the matter as to whether it would be required by either party, then, unless it be required, it might fairly be said to be waived. That perhaps is the distinction between the two cases. Suffice it for us to say, however, that when we find a Supreme Court case exactly in point, we cannot say that the case is overruled and refuse to follow it until the Supreme Court itself overrules it. At any rate until further advised by the Supreme Court, we shall hold that Grand Rapids F. Ins. Co. v. Finn,

will be binding in this case, and that the court below did not err in hold-ing that it was a question that the jury should not consider.

Now there is another proposition that is set up as a de-fense here, and it is called the "iron safe clause." They seem to have a printed slip that is used when they insure a country store, that is pasted into the body of the policy and becomes a part of the policy, and that says, after stating that there is so much money on the stock of goods in said store, that:

"It is a part of the consideration for which this policy is issued, and the basis upon which the rate of premium is fixed, that assured under this policy hereby covenants and agrees to keep a set of books, showing a complete record of business transacted, including all pur-chases and sales, both for cash, credit and exchange, together with the last detailed inventory of stock which shall have been taken within twelve months prior to the date of the happening of any loss; and further covenants and agrees to keep such books and inventory securely locked in a fireproof safe at night, and at all times when the store men-tioned in the within policy, is not actually opened for business, or in some secure place not exposed to a fire which would destroy the house where said business is carried on. And in case of loss, the assured agrees and covenants to produce such books and inventory; and in the event of a failure to produce the same, this policy shall be deemed null and void, and no suit or action at law shall be maintained for any such loss."

It was argued that the party here was required to take an inventory every twelve months, but I don't see anything of that kind required in the policy. The language of the policy is this:

"It is a part of the consideration for which this policy is issued, and the basis upon which the rate of premium is fixed, that assured under this policy hereby covenants and agrees to keep a set of books, showing a complete record of business transacted, including all purchases and sales, both for cash, credit and exchange, together with the last detailed inventory of stock which shall have been taken within twelve months prior to the date of the happen-ing of any loss; and further covenants and agrees to keep such books and inventory of stock securely locked, etc."

He is to take and keep it, and keep an inventory which shall have been taken within twelve months prior to the date, or it may have been taken twelve months before. He does not agree to take an inventory every twelve months. That may have been the understanding of the insurers. Indeed they argue along that line, for when this fire occurred, it transpired that this inventory had been taken a year and seven days

before, and it was objected that they could not use that inventory. We don't think this clause would bar that inventory. We think he had a right to use that inventory and rely upon it.

It appears from the testimony in the case that this fire occurred a little after 10 o'clock at night. It seems in that village it is a custom, and they had in the store, a little lunch counter over which they sold such articles as are sold at lunch counters, and they kept open until 10 o'clock; they live in a railroad town; it appears that one brother had started home when he heard the alarm of fire and went back. The other brother had remained in the store and was serving at the lunch counter.

The fire originated in the second store from them, and there was a great deal of excitement and discussion as to how they should protect this building, and questions of that kind came up, but the fire progressed and the parties began to get out what things they could, and finally the building was burned. It appears that the parties had kept certain books, and that the main body of those books were in the safe, but there was left out one bill book, and a cash book, and those were burned.

Now as I have stated, they kept certain books; they did not keep them in the form perhaps that a scientific bookkeeper would keep them; they kept an account of the goods sold to their customers; they kept a cash book, and kept the bills of goods that were bought. They also kept a separate book and when they paid any bills they kept track of them in that book; and from all those things they had the data to make up an account. They did not keep what is called a merchandise account showing all goods received, and showing the amount sold. It is set up in the answer that Kistner did not keep any such books of account as he was required to keep, and that he did not furnish those books. He did not produce the whole of the books for the reasons I have stated. Now the court charged the jury thus:

"The fourth defense relates to the keeping of a set of books showing a complete record of the business transacted, and the entire defense as stated in the answer I have read to you in stating the issues in the case. The defendant claims that the plaintiff did not keep a set of books as required by the policy, and that he did not have a detailed inventory of the stock as required by the policy, and that if he had any books or inventory, he failed to keep them in a safe, or other secure place, as he was required to do under the contract. This provision of the policy set up in the fourth defense is legal and binding upon the plaintiff, and if you find from the evidence that the plaintiff failed to substantially comply with the same, he cannot recover. If you find from the evidence that the plaintiff failed to keep such books as were required, then he cannot

recover, or if you find that he' did keep such books, but that such books, or a part of them were destroyed at the time of the fire through the fault of the plaintiff, then, he cannot recover. But if you find from the evidence that the plaintiff substantially complied with this part of his contract in the keeping of his books and inventories, and in the preservation of them, if you also find any part of such books were destroyed at the time of the fire, but without fault of the plaintiff, that fact would not prevent him from recovering in the action.''

As I said, the insurance company stands upon this clause of the contract, that those books have not all been produced; they claim further under this clause, those books have not been kept. Now it is not claimed as I understand, that the parties should keep what might be called a scientific set of books, but they should keep books showing that the amount of goods that they have on hand be fairly and reasonably ascertained, and it. seems to us from the course of business, and from the testimony of the parties that the books they kept were sufficient to enable this company in case of loss to have ascertained substantially the amount of goods that the parties had on hand.

This man, as I have said, had been in business there for years; had been insured by the company for a long time; there is no claim made but what he was honest and upright, and no claim but what the parties who practically conducted the business, his sons, were the same, and there is no claim that they in any manner or form attempted to overstate the amount of their loss, or attempt to defraud the insurance company.

It is claimed, however, that the two books which were burned, that were important, were lost by reason of the negligence of the brothers, who represented the father; that the books should have been put in the safe before the time of the fire, and that after the alarm of fire was given, the brothers should have saved these books if they were out of the safe. We think that the charge of the court was substantially right upon this subject. If there had been gross negligence and carelessness on the part of the plaintiff or those representing him, and the jury so found, then he ought not to recover, but if they acted as ordinary and prudent men would act under such and like circumstances, then, and in that event they ought not to be visited with the penalty of a forfeiture of the amount of this policy or visited with the loss of the whole stock of goods.

A fire alarm is not a very pleasant sound to anyone, but when these brothers heard this one, they immediately did what every ordinary prudent man would do; they commenced to see about saving the building, and stopping the spread of the fire, and they worked to that end, but when the fire got to their building, they commenced to get out what

goods they could. Now perhaps it would have been wiser if they had thought of saving the two books that were afterwards burned, but it did not seem to have occurred to them, nor can we say they were guilty of gross negligence in that they did not stop to pick up those two books and save them; they were doubtless excited, but they were doing the best they could, and were acting honestly and fairly in their attempts to save the building and the contents, without any intention of defrauding the insurance company or defrauding anyone.

Some question is made about this eating room, that it really was not open. I don't know about that. I am inclined to think that that store was fairly open at that time. They might keep an eating house or a lunch counter and keep it open late in the evening, because that might be the best time for customers. So long as the store was open, and so long as parties wanted to purchase anything, the plaintiff had a right to sell. There is no doubt that so late in the evening, they did not expect many customers, and there might not be so much use for the cash-book's being out of the safe, but that cash book was there to be used, and we do not think they were guilty of negligence by having it out at that time of the night, and under those circumstances.

We realize that these are important questions, and there seem to have been a great many decisions upon this clause of the policy; these have been cited at length, and we have endeavored to grasp the spirit of them and to get at what is fairly and justly the thing that is right between these parties. We realize that these policies as a rule are full of conditions printed in fine print, and people generally don't read them, or know much about them if they do, and we imagine that it is very seldom that the companies provide a school of instruction to enlighten the policy holders; that they find out a great deal more about the meaning of a policy after a fire than before, and we think there should be a liberal construction as to the acts of these parties in regard to the keeping and saving of these books and what they did, and where they have sustained, as they have in this case, a fire loss,—honestly and justly as we believe—they should be recompensed in accordance with the spirit of the policy of insurance, or the principles of insurance.

Some minor questions have been raised in this case, but we do not find any errors in the record that are important, and the judgment of the court of common pleas will be affirmed

**Parker** and **Hull, JJ.,** concur.